UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| LEONA WARD, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) 2:14-cv-00323-JAW |
| | ) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER, | ) |
| SOCIAL SECURITY ADMINISTRATION | ) |
| | ) |
| Defendant | ) |

### RECOMMENDED DECISION[1]

Plaintiff Leona Ward seeks disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Defendant Commissioner found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

As explained below, following a review of the record, and after consideration of the parties' arguments, the recommendation is that the Court affirm the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the April 5, 2013, decision of the Administrative Law Judge (ALJ) (ECF No. 10-2).[2] The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of schizophrenic, paranoid and other psychotic disorders; affective

---

[1] The Court referred the matter for report and recommended decision.

[2] The Appeals Council found no reason to reject the ALJ's decision, making it the decision under review herein.

disorder; anxiety related disorders; and personality disorders.  (ALJ Decision ¶¶ 3, 4.)  After considering the impairments, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to work at all levels of physical exertion, but is restricted by non-exertional limitations to simple, routine, repetitive tasks; and occasional interaction with coworkers, supervisors, and the general public.  (*Id.* ¶ 5.)  At step 4 of the sequential evaluation process, the ALJ determined that Plaintiff had not established an inability to engage in past relevant work as a bicycle courier.  (*Id.* ¶ 6.)  Additionally, based on testimony from a vocational expert, the ALJ concluded that Plaintiff could adjust to other full-time substantial gainful activity, which includes work in sedentary occupations such as assembler, packer, and addresser.  (*Id.*)  The ALJ thus ultimately determined that Plaintiff was not under a disability from September 15, 2010, the alleged onset date, through April 5, 2013, the date of decision.  (*Id.* ¶ 7.)

## STANDARD OF REVIEW

A court must affirm the administrative decision provided that the ALJ applied the correct legal standards and provided that the decision is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome.  *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981).  "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)

**DISCUSSION**

Plaintiff argues that the ALJ erred when she failed to address Plaintiff's ability to engage in substantial gainful activity on a sustained basis, which approach was contrary to Defendant's "full-time work rule." Plaintiff maintains that the ALJ in effect required Plaintiff to prove that she was "totally disabled," when the ALJ should have assessed whether Plaintiff was simply unable to sustain full-time work on a regular and continuing basis. (Statement of Errors at 4-5.)

According to Plaintiff, with her condition, she cannot work full-time because full-time work activity would result in an exacerbation of her symptoms, particularly her tendency to hear voices when under significant stress. (*Id.* at 6; Hr'g Tr., R. 40, 45, 47, ECF No. 10-2.) In support of her position, Plaintiff cites the expert opinion of her treating psychiatrist, Dr. Mohammad Farooque, who determined, *inter alia*, that Plaintiff cannot function in the workplace, cannot complete a normal workweek or workday without interruption caused by her symptoms, and must remain in a controlled environment in order to avoid escalation of her paranoia and delusions. (Exs. 29F, 35F.) Plaintiff contends that the ALJ failed to give appropriate weight to Dr. Farooque's opinions, and in fact failed to consider or reference the second of Dr. Farooque's two reports regarding the degree of Plaintiff's impairment. (Statement of Errors at 9.) Plaintiff further notes that although the ALJ assigned great weight to the opinion of the Maine Disability Determination Services consulting physician, Dr. Spangler, who concluded that Plaintiff is limited in her ability to complete a full workday or workweek without interruption from her symptoms, the ALJ did not discuss the effect of Plaintiff's medications on her ability to work. (*Id.* at 11 – 12.)

**A.     The ALJ did not subject Plaintiff's applications to a heightened standard**

In assessing whether a claimant is disabled for social security purposes, the ALJ must determine whether claimant has the ability to perform "substantial gainful activity," 20 C.F.R. §§

404.1572, 416.972, on a "regular and continuing basis," 20 C.F.R. §§ 404.1545(b), (c), 416.945(b), (c). *See also* Social Security Ruling 96–8p ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). Plaintiff argues that the ALJ effectively did not apply the "full-time work rule" when the ALJ relied on Plaintiff's part-time work history as contradicting Plaintiff's claim of disability (Statement of Errors at 5, citing R. 21), and when the ALJ suggested that Plaintiff's treatment history was inconsistent with the treatment one would expect for a person who is "totally disabled." (*Id.*, citing R. 29.)

Contrary to Plaintiff's contention, the ALJ did not apply a heightened standard in her assessment of Plaintiff's claim. First, the ALJ correctly stated the applicable standard for assessing her RFC. (R. 20.) In addition, when the ALJ characterized Plaintiff's part-time work as contradictory to Plaintiff's disability claim, the ALJ was referencing the nature of the work, rather than whether the work was full-time or part-time.[3] (R. 21.) Similarly, the ALJ's observation about the inconsistency between Plaintiff's treatment and one who claims to be "totally disabled" was made in the context of the ALJ's assessment of the reliability of Plaintiff's assertions regarding her limitations.[4] (R. 29.) The ALJ did not, as Plaintiff contends, require Plaintiff to prove that she

---

[3] The ALJ suggested that she would elaborate on this observation in the opinion. The ALJ subsequently noted that Plaintiff worked after the alleged onset date of her disability (R. 22), and that she "performed part-time, medium level work until she moved to Florida …" (R. 27).

[4] The assessment of a claimant's credibility is an essential part of an ALJ's responsibility. *Rodriguez v. Celebrezze,* 349 F.2d 494, 496 (1st Cir. 1965) ("Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]."). The ALJ determined that Plaintiff's lack of employment was likely the result of factors other than her alleged disability. For instance, the ALJ found that Plaintiff's failure to persist in substantial gainful activity was a lifestyle choice rather than the product of physical and mental symptoms of her impairments. At step 1 of the sequential evaluation process, the ALJ noted that Plaintiff's earnings fell below the level of substantial gainful activity in September 2010 because she had at that time decided to move to Florida. (R. 21, ¶ 2.) A review of the "D" exhibits in the record (ECF No. 10-5) reflects the change in earnings. In the ALJ's assessment, Plaintiff continued to work in jobs consistent with her historic, full-time capacity, but elected to work on a part-time basis. (R. 22.) In support of this negative credibility inference, the ALJ identified two counseling notes that she deemed significant. First, an August 23, 2010, note revealed that Plaintiff was finally receiving child support, wanted more time at home, and was investigating the possibility of getting SSI/SSDI. (Ex. 13F, R. 364.) Second, a February 23, 2011, note suggested that Plaintiff and her family were in the process of moving to Florida and that she was appealing a denial of her application for SSI benefits. (Ex. 20F, R. 431.) The ALJ inferred that it was not "coincidental that [Plaintiff's] work schedule decreased" in anticipation of a move to Florida. (R. 26.)

was "totally disabled."

## B. The ALJ considered and permissibly discounted Dr. Farooque's opinions

While Plaintiff maintains that the ALJ did not consider or reference reports of Dr. Farooque, the record reflects otherwise. For instance, the ALJ noted the second opinion letter in her listing discussion. (ALJ Decision ¶ 4.) The ALJ also sufficiently explained her decision to reject Dr. Farooque's opinions regarding Plaintiff's work capacity.

Because Dr. Farooque is a treating source, the ALJ was required to give "good reasons" for the weight assigned to his opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In his February 1, 2013, letter report (Ex. 35F), Dr. Farooque assessed significant mental impairment and auditory hallucinations that prevent thinking and judgment, except for the most basic activities of daily living, and an inability to respond to direction or supervision or to handle even low-stress work. The ALJ determined that Dr. Farooque's conclusions were unreliable based on multiple factors, including the inconsistency between Plaintiff's Global Assessment of Functioning score and Dr. Farooque's opinions, the lack of specificity or the vagueness of Dr. Farooque's report that Plaintiff hears voices "on occasion," the absence of treatment records from Dr. Farooque after the summer of 2012, prior treatment notes that reflect that Plaintiff's auditory delusions are controlled on medication,[5] and the lack of work related limitations documented in Dr. Farooque's records. (R. 23-24, citing Ex. 31F, R. 491.)

A review of the record thus reveals that the ALJ considered all of the pertinent medical information, including Dr. Farooque's reports, and that the ALJ articulated "good reasons" to reject Dr. Farooque's opinions.

---

[5] Defendant also notes the introduction of certain evidence before the Appeals Council, which evidence further supports a finding that symptoms are controlled with medication and that Plaintiff denied side effects. (Response at 5 & n.1, citing R. 650-51.)

### C. Effects of medication

Plaintiff maintains that the side effects of her medications, which effects include considerable drowsiness, are severe, are documented by her treatment provider, and prevent full-time work activity. Plaintiff argues that the ALJ failed to discuss the impact of the side effects on Plaintiff's work capacity. (Statement of Errors at 11.)

The evidence regarding the effects of Plaintiff's medications consists of Dr. Farooque's report and Plaintiff's testimony. As explained above, based on her credibility and reliability assessments, the ALJ gave little weight to Dr. Farooque's opinions and to Plaintiff's subjective complaints. Indeed, the ALJ noted that at one point (April 2, 2012, R. 27; *see* Ex. 31F, R. 492), Plaintiff denied any side effects from the medication.[6] Given that Plaintiff and Dr. Farooque are the sources of the evidence regarding the effects of Plaintiff's medications on her ability to work, and given the ALJ's credibility and reliability assessments, which are supported by record evidence, the ALJ was not required to discuss the medication issue further.

### D. Obesity

Plaintiff has a body mass index (BMI) in excess of 60. Plaintiff argues that the ALJ erred when she failed to find that obesity imposes a restriction on Plaintiff's residual functional capacity. (Statement of Errors at 12.) Plaintiff contends that such a high BMI must be considered a severe impairment.

The ALJ discussed obesity at step 2 and concluded that Plaintiff failed to demonstrate that obesity is linked to a specific medically determined condition, or even that it negatively impacts a weight-bearing joint. (R. 22.) Additionally, the ALJ found that Plaintiff engages in a range of

---

[6] The record before the Appeals Council included Dr. Farooque's October 1, 2012, note that specifically addressed the side effects of medication as follows: "Patient denies any side effects from medications such as unsteady, dizziness, tremor, headaches, GI upset (nausea, vomiting, diarrhea, abdominal cramps), sexual problems, seizure, seeing double or hazy vision or any other side effects." (R. 651.)

activities, which include her ability to ambulate, drive, and perform household chores, and which suggest that obesity is not a significant limiting factor for Plaintiff. (*Id.*) Based on Plaintiff's activity level, the absence of an expert assessment that establishes an actual work limitation based on obesity, and the lack of any other significant medical finding on the issue, referencing to Social Security Ruling 02-01p, the ALJ concluded that "obesity does not present an adverse impact on [Plaintiff's] other medically determined impairments and, specifically, on her residual functional capacity to work." (*Id.*) [7]

Although morbid obesity has been diagnosed as an Axis III factor relevant to Plaintiff's mental health impairments (*E.g.*, Ex. 30F, R. 485.), the record lacks any evidence that translates Plaintiff's obesity to a particular functional capacity assessment. Plaintiff, therefore, failed to demonstrate the effect of her obesity on her work capacity.[8] The ALJ thus did not err when she failed to identify obesity as a severe impairment that should be considered in the assessment of Plaintiff's RFC.

**E.   Credibility**

Plaintiff argues that the ALJ did not appropriately consider her 23-year work history as strong evidence in support of her claim and her credibility. (Statement of Errors at 14-16.) Defendant maintains that the ALJ fairly assessed Plaintiff's credibility given the entire record. (Response at 14-18.)

It is "the prime responsibility" of the ALJ to assess credibility. *Rodriguez,* 349 F.2d at 496.

---

[7] The ALJ also gave weight to the assessment offered by treating source Dr. Sanjeev Sharma, M.C., P.C., that Plaintiff "has no physical limitations with regard to sitting, standing, walking, lifting, carrying or handling objects." (Ex. 26F, R. 465.)

[8] *Sawyer v. Colvin,* No. 1:12–CV–231–JAW, 2013 WL 1760534, at *4, 2013 U.S. Dist. Lexis 59339, at *12 (D. Me. Mar. 30, 2013) (Mag. J. Rec. Dec., adopted Apr. 24, 2013) ("[T]he burden remains with the claimant at the stage of the process in which RFC is determined....").

Although Plaintiff's work history can be viewed in a favorable light, the work history does not control the credibility assessment.[9] Here, the ALJ made her credibility determinations after reviewing the entire record, observing Plaintiff testify, and considering Plaintiff's testimony. The Court is not to substitute its judgment for the judgment of the ALJ, particularly as to the ALJ's credibility determinations. In short, Plaintiff has not presented a compelling argument, including Plaintiff's work history, that would support the Court disturbing the ALJ's findings on credibility.

**F.    Dr. Spangler**

Plaintiff contends that although the ALJ stated that she gave great weight to the opinion of Maine Disability Determination Services consultative expert A. Stephen Spangler, Sc.D. (Ex. 15F), the ALJ failed to mention Dr. Spangler's opinion that Plaintiff decompensates when under stress, or his opinion that Plaintiff is moderately impaired in her ability to complete a normal workday and workweek. (Statement of Errors at 10.) According to Plaintiff, the ALJ's failure to discuss Dr. Spangler's opinion violated Defendant's rule that the adjudicator must discuss and explain why weight is given, or not given, to an expert opinion. (*Id.*, citing SSR 98-6p.)

Plaintiff's argument is not persuasive. A reviewing expert's identification of a moderate limitation in Part I (the checkbox "summary conclusions" section) of the Administration's mental residual functional capacity assessment form does not constitute an actual residual functional capacity assessment. Instead, the expert's assessment of functional capacity is expressed in

---

[9] Plaintiff's argument that case law supports her contention that her work history requires a different credibility assessment is unconvincing. In *Arroyo v. Secretary of Health & Human Services*, 932 F.2d 82, 88 (1st Cir. 1991), the First Circuit reasoned that an alcoholic plaintiff's "lengthy period of consecutive employment" supported the ALJ's conclusion that the plaintiff could control his drinking well enough to maintain employment. In other words, a positive work history was cited in support of the denial of benefits. In *Bianchi v. Secretary of Health & Human Services*, 764 F.2d 44, 46 (1st Cir. 1985), the First Circuit concluded that remand was necessary where the Secretary found that psychiatric symptoms were non-severe (at step 2), but the plaintiff's work history demonstrated two unsuccessful work attempts due to panic attacks. In the third case cited by Plaintiff, *Hodgens v. General Dynamics Corp.*, 144 F.3d 151 (1st Cir. 1998), the First Circuit affirmed an award of summary judgment for the defendant in an employment action brought under the ADA and FMLA. The cases confirm that a claimant's work history is relevant to credibility, but do not suggest that work history is the determinative factor.

narrative findings in Part III of the form. In Part III, Dr. Spangler opined that Plaintiff is able to focus on and persist at simple work tasks. The ALJ adequately discussed the merit of Dr. Spangler's assessment, which corresponds with the ALJ's residual functional capacity finding that restricts Plaintiff to "simple, routine, repetitive tasks." (ALJ Decision ¶ 5.) That is, the ALJ's overall discussion of the longitudinal medical record, her credibility evaluation, and her critique of Dr. Farooque's opinion constitute a sufficient discussion of the reasons for the ALJ's decision to view favorably Dr. Spangler's assessment that Plaintiff was able to persist at simple work activity during the period under review.

## CONCLUSION

Based on the foregoing analysis, I recommend that the Court affirm Defendant's administrative decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 10th day of July, 2015.